```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF TENNESSEE
                     WESTERN DIVISION
```

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 06-20343 |
| ) | |
| **DEMOND KEVIN JONES,** ) | |
| ) | |
| Defendant. ) | |

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND DENYING DEFENDANT'S MOTION TO SUPPRESS**

Before the Court is the July 26, 2010 Motion to Suppress filed by Defendant Demond Kevin Jones ("Jones") (Mot. to Suppress, ECF No. 56); the March 12, 2011 Report and Recommendation of the Magistrate Judge (Report and Recommendation, ECF No. 95); and Jones' April 1, 2011 Objections to the Report and Recommendation (Demond Kevin Jones' Objections to Report and Recommendation, ECF No. 98) ("Objections"). The Magistrate Judge recommends that the Court deny Jones' Motion to Suppress. (Report and Recommendation 2, 16.) The United States of America (the "Government") has responded in opposition to Jones' Motion to Suppress and Objections. (Resp. of the United States to Def.'s Mot. to Suppress, ECF No. 66; Resp. of the United States to Def.'s Objections to Report and Recommendation, ECF No. 102.) For the following reasons, Jones' Objections are

OVERRULED, the Report and Recommendation is ADOPTED, and Jones' Motion to Suppress is DENIED.

**I.   Background**

On September 11, 2006, the grand jury returned an indictment charging Jones with one count of knowingly possessing more than fifteen unauthorized access devices with intent to defraud, in violation of 18 U.S.C. § 1029(a)(2) and § 1029(a)(3), and one count of knowingly possessing with intent to use unlawfully five or more identification documents, authentication features, or false identification documents, in violation of 18 U.S.C. § 1028(a)(2) and § 1028(a)(3).  (See Indictment 1-2, ECF No. 2.)  Jones has moved to suppress evidence seized from his vehicle and from the premises at 1961 Rembert Place.  (See Mot. to Suppress 1; Mem. of Law and Facts in Supp. of Mot. to Suppress 10-11, ECF No. 57.)

In 2004, Larry Gordon ("Gordon") began renting a two-bedroom townhouse located at 1961 Rembert Place in Memphis, Tennessee.  (See Report and Recommendation 2.)  William Thomas ("Thomas") managed the townhouse, which his parents owned.  (See id.)  Although only Gordon's name appeared on the lease, Jones resided at the townhouse and paid some of the rent.  (See id.)  Thomas was aware that Jones resided at the townhouse.  (See id.)  In 2005, Gordon and Jones stopped paying rent, and Thomas initiated eviction proceedings.  (See id.)  In May 2005, Thomas

2

caused a detainer warrant to be issued by the Shelby County Court of General Sessions. (See id.) On September 14, 2005, a judgment and writ of possession were entered in favor of Thomas, authorizing him to evict Gordon and Jones and remove their property from the townhouse. (See id. at 3.)

On September 21, 2005, at approximately 8:30 a.m., Thomas, a Shelby County Sheriff's deputy, a locksmith, and two movers arrived at the townhouse to evict Gordon and Jones. (See id.) After the locksmith had opened the front door, the deputy confirmed that no one was inside the premises and left the scene, and Thomas and the two movers began removing items from the premises and placing them on the curb. (See id.) Thomas eventually entered a bedroom and saw several credit cards, identification cards, and driver's licenses on the night stand and window ledge. (See id.) Thomas also saw credit cards, birth certificates, credit card applications, and passports in an open, clear plastic bin next to the bed, as well as a card laminating machine and another open box storing more identification cards and documents. (See id. at 3-4.) When Thomas inspected some of the cards, he noticed that one card contained Jones' personal identification information, but displayed a photograph of someone else Thomas knew. (See id. at 4.) Some cards displayed Jones' photograph but contained the personal identification information of other individuals. (See

3

id.)  Other cards had photographs of different individuals but displayed the same name.  (See id.)

After seeing the cards and documents, Thomas called a nearby police station, reported what he had found, and was told to bring the items to the station.  (See id. at 6.)  Thomas placed the cards and documents in a clear plastic container and a box, put lids on the container and the box, and transported them to the station.  (See id.)  Once Thomas had arrived at the station, he gave the container and the box to Memphis Police Department Officer Selgyna McQueen-Brown ("Officer McQueen-Brown"), described their contents, and stated his suspicion that the items were criminal in nature.  (See id.)  Officer McQueen-Brown looked through the clear plastic container and recognized several items as fraudulent identification documents.  (See id.)  The container and the box were taken to a room where she and other officers began inspecting the items more closely.  (See id.)

Thomas and another officer returned to 1961 Rembert Place, where Thomas saw Gordon retrieving his property.  (See id. at 6-7.)  Thomas called officers at the station to inform them that Gordon was at the townhouse.  (See id. at 7.)  Officer McQueen-Brown and other officers traveled to the townhouse, asked Gordon for identification, discovered that he had an outstanding arrest warrant, and arrested him based on that warrant.  (See id.)

4

Shortly thereafter, Jones arrived at the townhouse in his car and pulled into the driveway. (See id.) Thomas and Gordon identified Jones as the person who resided with Gordon and who was responsible for the identification documents. (See id.) Jones attempted to back out of the driveway, but the officers stopped him. (See id.) Officer McQueen-Brown approached Jones' car and asked for identification. (See id.) Jones provided a driver's license displaying his photograph, but listing a different name. (See id.) Officer McQueen-Brown then looked into the car and saw on the passenger's side an open briefcase containing several identification documents and credit cards. (See id. at 7-8.) She also saw other identification documents in the driver's side door panel. (See id. at 8.) Jones was arrested because he possessed fraudulent identification documents and because he had outstanding arrest warrants. (See id.) His car was inventoried and towed to the city lot. (See id.)

The Magistrate Judge conducted a suppression hearing at which he heard testimony from Thomas, Officer McQueen-Brown, and Jones. (See id. at 1.) Based on the briefs filed in support of and in opposition to Jones' Motion to Suppress, the evidence presented at the suppression hearing, and the entire record, the Magistrate Judge recommended that the Court deny the Motion to Suppress. (See id. at 1-2.) He offered two reasons for

5

recommending against suppression of the identification documents from 1961 Rembert Place. (See id. at 8-14.) First, Jones had no reasonable expectation of privacy in the premises because he had been lawfully evicted. (See id. at 8-11.) Second, the officers' search of the containers did not impermissibly exceed the scope of Thomas' private search before he took the containers to the police station. (See id. at 11-14.) The Magistrate Judge also recommended against suppression of the identification documents seized from Jones' car under the automobile exception to the warrant requirement. (See id. at 14-16.)

## II. Standard of Review

"It is well-settled that upon proper objection by a party, a district court must review de novo a magistrate judge's ruling on a motion to suppress." United States v. Quinney, 238 F. App'x 150, 152 (6th Cir. 2007) (citations omitted). The district court need not review—under a de novo or any other standard—those aspects of a magistrate judge's report and recommendation to which no specific objection is made. See Thomas v. Arn, 474 U.S. 140, 149-50 (1985); United States v. Robinson, 352 F. App'x 27, 28-29 (6th Cir. 2009).

## III. Analysis

Jones has filed two objections to the Magistrate Judge's Report and Recommendation. First, Jones argues that he had an

6

objectively reasonable expectation of privacy in the residence and has standing to challenge the officers' search of the containers Thomas provided. (See Objections 1-2.) Second, Jones argues that the officers' search of the containers exceeded the scope of Thomas' private search, contrary to the Fourth Amendment. (See id. at 2-4.) Jones argues that if the Court finds the warrantless search of the containers was unconstitutional, the Court must suppress evidence obtained from his vehicle as fruit of the poisonous tree. (See id. at 4.) The Government argues that Jones' objections are not well-taken. (See Resp. of the United States to Def.'s Objections to Report and Recommendation 1-10.)

### A. Whether Jones Had a Reasonable Expectation of Privacy

"[A] defendant has standing to challenge the admission of evidence only if the defendant's own constitutional rights have been violated." United States v. Davis, 430 F.3d 345, 359-60 (6th Cir. 2005) (citing United States v. Salvucci, 448 U.S. 83, 86-87 (1980)). "In cases involving Fourth Amendment violations, we determine standing by deciding whether a defendant can establish 'a legitimate expectation' of privacy in the area searched or the items seized." Id. (citations omitted).

A two-part inquiry determines whether a defendant has a legitimate expectation of privacy:

7

> First, we ask whether the individual, by [his] conduct, has exhibited an actual expectation of privacy; that is, whether he has shown that he sought to preserve something as private. . . . Second, we inquire whether the individual's expectation of privacy is one that society is prepared to recognize as reasonable.

United States v. Adams, 583 F.3d 457, 463 (6th Cir. 2009) (quoting United States v. Waller, 426 F.3d 838, 844 (6th Cir. 2005)) (alterations in original); accord Guest v. Leis, 255 F.3d 325, 333 (6th Cir. 2001) (citing Minnesota v. Olson, 495 U.S. 91, 95-96 (1990)).

To determine whether a subjective expectation of privacy is objectively reasonable, courts consider several factors:

> (1) whether the defendant was legitimately on the premises; (2) his proprietary or possessory interest in the place to be searched or the item to be seized; (3) whether he had the right to exclude others from the place in question; and (4) whether he had taken normal precautions to maintain his privacy.

United States v. Dillard, 438 F.3d 675, 682 (6th Cir. 2006) (citing United States v. King, 227 F.3d 732, 744 (6th Cir. 2000)).  Put differently, "[t]he 'factors to be considered in determining whether there was a legitimate expectation of privacy include ownership, lawful possession, or lawful control of the premises searched.'"  United States v. Hunyady, 409 F.3d 297, 301 (6th Cir. 2005) (quoting United States v. McRae, 156 F.3d 708, 711 (6th Cir. 1998)).  In sum, "landlord-tenant law determines whether a person's expectation of privacy is

8

objectively reasonable under the Fourth Amendment." United States v. Washington, 573 F.3d 279, 284 (6th Cir. 2009) (citing Hunyady, 409 F.3d at 301).

"By definition, trespassers cannot have an objectively reasonable expectation of privacy in the property on which they are trespassing." Id. (citing McRae, 156 F.3d at 711). Before a tenant is lawfully evicted, the tenant is not a trespasser without a reasonable expectation of privacy in his residence:

> The landlord's mere authority to evict a person cannot of itself deprive that person of an objectively reasonable expectation of privacy. There are extensive legal procedures that a landlord must adhere to before occupants are lawfully dispossessed of property without their consent, and the landlord's failure to evict an occupant who is in technical violation of the lease effectively waives whatever authority the landlord has to treat a person as a trespasser.

Id. (citations omitted). However, once a landlord has obtained a court order lawfully evicting a tenant from a residence, the tenant ceases to have an objectively reasonable expectation of privacy in that residence. See United States v. Curlin, No. 10-3033, 2011 WL 1532141, at *3 (7th Cir. Apr. 25, 2011) (concluding that the defendant had no reasonable expectation of privacy where he had been evicted over two weeks earlier by court order and stating that "[o]ur conclusion is consistent with previous decisions of our sister circuits that individuals who occupy a piece of property unlawfully have no claim under

9

the Fourth Amendment") (citations omitted); United States v. Patrick, 257 F. App'x 844, 847 (6th Cir. 2007) (holding that the defendant "had no legitimate expectation of privacy after she was evicted, the building's locks were changed, and she no longer had access to the building"); United States v. Ross, 43 F. App'x 751, 758 (6th Cir. 2002) (concluding that the defendant "had no reasonable expectation of privacy in an apartment to which he had no legal claim"); cf. McRae, 156 F.3d at 711 ("[T]he district court properly concluded that McRae did not have a legitimate expectation of privacy by virtue of having stayed a week in the vacant premises that he did not own or rent."); United States v. Allen, 106 F.3d 695, 699 (6th Cir. 1997) ("Once 'a hotel guest's rental period has expired or been lawfully terminated, the guest does not have a legitimate expectation of privacy in the hotel room or in any article therein of which the hotel lawfully takes possession.'" (quoting United States v. Rahme, 813 F.2d 31, 34 (2d Cir. 1987))).

Here, Jones argues that he had an objectively reasonable expectation of privacy in his residence because he was not given adequate notice of the eviction proceedings in which the Shelby County Court of General Sessions restored possession of 1961 Rembert Place to Thomas. (See Objections 1-2.) Jones asserts that the detainer warrant giving notice of the eviction proceedings was not personally served on him or Gordon, but

10

posted at the property on June 17, 2005, and that the detainer warrant listed a trial date of June 28, 2005, but the trial was continued and was held on August 30, 2005. (See id.; Detainer Warrant, ECF No. 66-1; Writ of Possession, ECF No. 66-1.) Neither Jones nor Gordon appeared on the actual trial date. (See Objections 2.)

The sheriff's department posted the detainer warrant at the property after three unsuccessful attempts to serve Gordon, the tenant on the lease, personally. (See Detainer Warrant 1.) The three unsuccessful attempts are documented on the face of the warrant. (See id.) The judgment and writ of possession entered on September 14, 2005, awarded Thomas possession of the property. (See id.; Writ of Possession; Report and Recommendation 3.) Tennessee law provides that, in an action to regain possession of real property, service of process is valid if, after attempting personal service of process on three different dates and documenting those attempts on the face of the warrant, a sheriff or sheriff's deputy "[p]ost[s] a copy of the warrant or summons on the door of the premises." Tenn. Code Ann. § 29-18-115(e)(2)(A); see Sec'y of Veteran's Affairs v. Frazier, No. M2006-00544-COA-R3-CV, 2007 WL 595595, at *1 (Tenn. Ct. App. Feb. 23, 2007) ("We have examined the record closely and find that process, which was served by being posted to the door of the residential property after three unsuccessful

11

attempts, was effective because the plaintiff, the Secretary of Veteran's Affairs, is only seeking possession of the property, not a judgment for monetary damages." (citing Tenn. Code Ann. § 29-18-115)). Therefore, Gordon and Jones had sufficient notice of the eviction proceedings under Tennessee law. See Tenn. Code Ann. § 29-18-115(e)(2)(A); Frazier, 2007 WL 595595, at *1.

By issuing the judgment and writ of possession, the Shelby County Court of General Sessions necessarily concluded that Thomas had satisfied the prerequisites to evicting Gordon and Jones, which include valid service of process and notice of the court date. See Tenn. Code Ann. § 29-18-115(e)(2)(A); Frazier, 2007 WL 595595, at *1. The Shelby County Court of General Sessions also necessarily concluded that the eviction would not run afoul of the due process requirements of notice and an opportunity to be heard before eviction. See Revis v. Meldrum, 489 F.3d 273, 281 (6th Cir. 2007). There is no evidence that Gordon or Jones sought to set aside, appeal, or otherwise challenge in a timely manner the judgment awarding possession to Thomas.

Jones points to no evidence suggesting that he lacked notice of the eviction proceedings under Tennessee law beyond the number of continuances, the fact that he returned to the residence soon after his possessions were removed from his bedroom, and the alleged lack of testimony that he had actual

notice that he was to be evicted. (See Objections 1-2.) Because Jones had sufficient notice of the eviction proceedings under Tennessee law, his arguments are without merit. See Tenn. Code Ann. § 29-18-115(e)(2)(A); Frazier, 2007 WL 595595, at *1. Jones has not demonstrated that he lacked actual notice. As the Magistrate Judge found, Jones is not credible.[1] (See Report and Recommendation 2.)

Because Thomas had a lawful eviction order when he entered the property on September 21, 2005, Jones had no legal right to be on the premises, he had no possessory interest in the place to be searched, and he had no right to exclude others from the place in question. See Dillard, 438 F.3d at 682. He did not take normal precautions to maintain his privacy because he did not leave after the Court ordered his eviction on September 14, 2005. See id. He did not own the property, lawfully possess the property, or have lawful control of the premises entered. See Hunyady, 409 F.3d at 301. Jones did not have an objectively reasonable expectation of privacy in the property.[2] See Curlin, 2011 WL 1532141, at *3; Patrick, 257 F. App'x at 847; Ross, 43 F. App'x at 758. Therefore, Jones' objection to the Magistrate

---

[1] Although Jones asserts that Thomas' testimony about the eviction process contradicts official court records about the eviction proceedings, Jones does not seem to contest in his Objections the Magistrate Judge's credibility findings that he was not a credible witness at the suppression hearing. (See Report and Recommendation 2; Objections 1-5.) He has not specifically objected to that finding. (See Objections 1-5.)

[2] Jones also had no expectation of privacy that society is bound to recognize as reasonable because he was evicted by a lawful order. His constitutional rights were not violated.

13

Judge's conclusion that he lacked an objectively reasonable expectation of privacy is OVERRULED. The Magistrate Judge's proposed conclusion that Jones lacked an objectively reasonable expectation of privacy is ADOPTED.

> **B. Whether Officers' Search of Containers Exceeded Scope of Thomas' Search**

The Magistrate Judge concluded in the alternative that, if Jones had a reasonable expectation of privacy, the evidence taken from his residence would also be admissible because the officers' search of the containers did not impermissibly exceed the scope of Thomas' private search. (See Report and Recommendation 11-14.) Because the Court adopts the Magistrate Judge's conclusion that Jones lacked an objectively reasonable expectation of privacy in the property, Jones cannot challenge the admission of evidence taken from the property. See Davis, 430 F.3d at 359-60; see also United States v. Harris, 6 F. App'x 304, 307 (6th Cir. 2001) ("It is well established that the Fourth Amendment does not prohibit the warrantless search or seizure of evidence left in a place where there is no reasonable expectation of privacy.").

Even if Jones could challenge admission of the evidence, the evidence would be admissible. When Officer McQueen-Brown examined the container and the box at the police station, Thomas described their contents and she looked through the clear

14

plastic container from the outside and recognized several fraudulent identification documents. (See Report and Recommendation 6.)  Although Thomas might not have examined in detail every item in the container and the box, Officer McQueen-Brown saw fraudulent identification documents in the container in plain view and had probable cause to believe that the container and the box contained evidence of a crime.  Under the circumstances, the warrantless search of the containers was lawful.  See Boone v. Spurgess, 385 F.3d 923, 928 (6th Cir. 2004) ("The plain-view exception permits a warrantless seizure where '(1) the officer is lawfully positioned in a place from which the object can be plainly viewed; (2) the incriminating character of the object is immediately apparent; and (3) the officer has a lawful right of access to the object itself.'" (quoting United States v. Bishop, 338 F.3d 623, 626 (6th Cir. 2003))); United States v. Jackson, 381 F.3d 984, 989 (10th Cir. 2004) ("A warrantless search can be conducted if law enforcement agents see, within plain view, the contents of a container and it is apparent or a 'foregone conclusion' that such contents are contraband.  '[W]here the police already possess knowledge approaching certainty as to the contents of the container, the search of the container does not unreasonably infringe upon the individual interest in preserving the privacy of those contents.'" (quoting United States v. Corral, 970 F.2d 719, 725-

15

26 (10th Cir. 1992))); see also United States v. Jacobsen, 466 U.S. 109, 119 (1984) ("The agent's viewing of what a private party had freely made available for his inspection did not violate the Fourth Amendment.") (citations omitted); cf. United States v. McCaster, No. 94-5999, 1995 WL 620962, at *3 (6th Cir. Oct. 19, 1995) (concluding that a defendant "cannot have a legitimate expectation of privacy in a bag that revealed its contents, which officers found in a place in which he did not even assert any expectation of privacy").

Jones also had no reasonable expectation of privacy in the items in the containers because they were in plain view inside the property at which he had no legal right to reside and were concealed only when Thomas collected them, put them in containers, and placed lids on the containers before transporting them to the police. See United States v. Ellison, 462 F.3d 557, 561 (6th Cir. 2006); (Report and Recommendation 6). The officers' search of the containers did not exceed the scope of Thomas' search and was not unlawful. Therefore, Jones' objection to the Magistrate Judge's conclusion that the officers' search of the containers did not impermissibly exceed the scope of Thomas' private search is OVERRULED. The Magistrate Judge's proposed conclusion that the officers did not violate the Fourth Amendment is ADOPTED.

Because no constitutional violation has occurred, the fruit of the poisonous tree doctrine is inapplicable. See United States v. Taylor, 592 F.3d 1104, 1108 (10th Cir. 2010); United States v. Kendricks, 127 F. App'x 836, 843 (6th Cir. 2005). As the Magistrate Judge correctly concluded, the search of Jones' vehicle and the seizure of evidence found inside that vehicle were lawful under the automobile exception to the warrant requirement because Officer McQueen-Brown saw fraudulent identification documents inside the vehicle and knew Jones had fraudulent identification documents in his residence. See United States v. Lumpkin, 159 F.3d 983, 986 (6th Cir. 1998) (citations omitted); (Report and Recommendation 14-16). The officers could also lawfully search Jones' vehicle incident to his arrest because it was reasonable for them to believe the vehicle contained fraudulent identification documents, one of the offenses of arrest. See Arizona v. Gant, 129 S. Ct. 1710, 1723 (2009).

**IV. Conclusion**

For the foregoing reasons, Jones' Objections are OVERRULED, the Report and Recommendation is ADOPTED, and the Motion to Suppress is DENIED.

So ordered this 9th day of May, 2011.

s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

18