IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

UNITED STATES OF AMERICA,      )
                               )
       Plaintiff,              )
                               )
v.                             )
                               )      No. 06-20343-Ma/P
DEMOND KEVIN JONES,            )
                               )
       Defendant.              )

_____

REPORT AND RECOMMENDATION
_____

Before the court by order of reference is defendant Demond
Kevin Jones's Supplemental Motion to Suppress Evidence, and Motion
for Return of Criminal Property Pursuant to Rule 41, Federal Rule
of Criminal Procedure, or in the Alternative Motion to Reconsider
Order Adopting Magistrate Judge's Report and Recommendation Denying
Defendant's Motion to Suppress ("Motion to Reconsider"), filed
August 26, 2011.  (D.E. 113.)  The United States of America
("government") filed a response in opposition on September 7, 2011.
In his motion, Jones asks the court to reconsider its order of May
9, 2011 ("May 9 Order"), in which it adopted the March 12, 2011
report and recommendation of the undersigned magistrate judge
denying Jones's motion to suppress evidence ("March 12 Report").
For the reasons below, the court recommends that the Motion to
Reconsider be denied.

The facts pertinent to this Motion to Reconsider are set forth

in the March 12 Report and May 9 Order, and need not be repeated in full here. In his May 9 Order, the district judge adopted the March 12 Report's conclusion that because Jones had been lawfully evicted from his residence, he did not have an objectively reasonable expectation of privacy in his residence and thus lacks standing to challenge the evidence taken from the property. (See May 9 Order at 10-14.) The district judge further adopted the conclusion that, in the alternative, even if Jones had an objectively reasonable expectation of privacy, the evidence taken from his residence nevertheless would be admissible because the officers' search of the containers did not impermissibly exceed the scope of the landlord's (William Thomas) private-citizen search. (Id. at 14-17.)

As an initial matter, although Jones's present motion is also styled as a "Supplemental Motion to Suppress Evidence" and a "Motion for Return of Property Pursuant to [Fed. R. Crim. P.] 41," the court construes the motion solely as a motion to reconsider the May 9 Order.[1] Because the Federal Rules of Criminal Procedure make

_____

[1]With regard to the "Supplemental Motion to Suppress Evidence," because the district judge has already adopted the March 12 Report and has denied Jones's motion to suppress, there is no longer any pending motion for Jones to "supplement." As for his "Motion for Return of Property," the motion is no different from his motion to suppress which, as stated above, has already been denied by the district judge. See United States v. Madison, No. 02-20448, 2004 WL 5257959, at *4 n.2 (W.D. Tenn. Jan. 28, 2004) ("Because the motion for return of property is brought post-indictment, and the basis for that motion is the alleged unlawful search and seizure by Agent Burns, the motion is treated as a

no provision for a motion to reconsider, "courts adjudicating such motions in criminal cases typically evaluate such motions under the same standards applicable to a civil motion to alter or amend judgment pursuant to Fed. R. Civ. P. 59(e)." United States v. Jarnigan, No. 3:08-CR-7, 2008 WL 5248172, at *2 (E.D. Tenn. Dec. 17, 2008) (citing United States v. Titterington, No. CR 2-20165, 2003 WL 23924932, at *1 (W.D. Tenn. May 22, 2003); United States v. Sims, 252 F. Supp. 2d 1255, 1260-61 (D.N.M. 2003); United States v. Thompson, 125 F. Supp. 2d 1297, 1300 (D. Kan. 2000)); see also United States v. Hopewell, No. 1:08-cr-065, 2009 WL 1026452, at *1 (S.D. Ohio April 15, 2009); United States v. Ogden, No. 06-cr-20033, 2009 WL 778795, at *2 (W.D. Tenn. Mar. 20, 2009); United States v. Willyard, No. 3:07-CR-44, 2008 WL 471683, at *1 (E.D. Tenn. Feb. 19, 2008); United States v. Percy, No. 1:01-cr-278, 2007 WL 275969, at *1 (N.D. Ohio Jan. 25, 2007). A motion to alter or amend judgment may be based upon any one of the following grounds: (1) an intervening change of controlling law; (2) evidence not previously available has become available; (3) to correct a clear error of law; or (4) to prevent manifest injustice. Ogden, 2009 WL 778795, at *2. "It is not the function of a motion to reconsider either to renew arguments already considered and rejected by a court or 'to proffer a new legal theory or new evidence to support

---

motion to suppress.") (citing Stillman v. United States, No. 96-1607, 1997 WL 464044, at *1-2 (6th Cir. July 23, 1997); Fed. R. Civ. P. 41(g) (formerly Rule 41(e)).

-3-

a prior argument when the legal theory or argument could, with due diligence, have been discovered and offered during the initial consideration of the issue.'" McConocha v. Blue Cross & Blue Shield Mut. of Ohio, 930 F. Supp. 1182, 1184 (N.D. Ohio 1996) (quoting In re Aug. 1993 Regular Grand Jury, 854 F. Supp. 1403, 1408 (S.D. Ind. 1994)).

Jones does not allege in his Motion to Reconsider that the May 9 Order should be amended because of a change in controlling law or because of newly discovered evidence that was previously unavailable. Therefore, the court may only alter or amend the May 9 Order if doing so is necessary to correct a clear error of law or prevent manifest injustice. Jones raises three arguments in his motion. First, Jones contends that Thomas, by bringing the evidence he found in Jones's residence to the police station at the direction of the police, acted as an agent of the government. Jones argues that by acting as a government agent, Thomas's private-citizen search of the residence became a law enforcement search subject to Fourth Amendment scrutiny. In support of this argument, Jones points to the following testimony of Thomas at the suppression hearing:

> Q. What did you do once you discovered all of these items strewn about the bedroom?
>
> A. It seemed very suspicious so I called West Precinct, told them what I found and *they told me to bring it up there* [to the police station]. So I took it straight up to West Precinct.

(Tr. at 27) (emphasis added).

The court notes that this argument, as well as other arguments made by Jones in his motion, were not raised in his motion to suppress, at the suppression hearing, or in his written objections to the March 12 Report. In any event, the court submits that Thomas did not act as an agent of the government when he removed the items from the residence and brought them to the police station. In <u>United States v. Bowers</u>, 594 F.3d 522 (6th Cir. 2010), the court explained that the Sixth Circuit uses a "two-factor analysis" in determining "whether a private party is acting as an agent of the government" for purposes of the Fourth Amendment. <u>Id.</u> at 525-26 (citing <u>United States v. Hardin</u>, 539 F.3d 404, 418 (6th Cir. 2008)). Those two factors include "(1) the government's knowledge or acquiescence" to the search, and "(2) the intent of the party performing the search." <u>Id.</u> at 526 (quoting <u>Hardin</u>, 539 F.3d at 418). "If *the intent of the private party* conducting the search *is entirely independent* of the government's intent to collect evidence for use in a criminal prosecution, then the private party is not an agent the government." <u>Id.</u> (quoting <u>Hardin</u>, 539 F.3d at 418) (internal quotation marks omitted) (emphasis in original). "[I]t is the moment of the 'official invasion of the citizen's privacy' that is key to determining the reasonableness of that action." <u>Id.</u> (quoting <u>United States v. Jacobsen</u>, 466 U.S. 109, 115 (1984)); <u>see also</u> <u>Clements-Jeffrey v.</u>

-5-

<u>City of Springfield</u>, No. 3:09-cv-84, 2011 WL 3678397, at *10 (S.D. Ohio Aug. 22, 2011) ("In determining whether a private party is acting as a government agent, two facts must be proven:  First, the police must have instigated, encouraged, or participated in the search . . . .  Second, the individual must have engaged in the search with the intent of assisting the police in their investigative efforts.") (quoting <u>United States v. Lambert</u>, 771 F.2d 83, 89 (6th Cir. 1985) (internal quotation marks omitted)).

In <u>Bowers</u>, the defendant, Stephen Lee Bowers, resided in a two-story house with a female house mate, Titania Valdez.  Bowers and Valdez each had their own bedrooms and they shared common areas within the residence, including a dining area.  While Bowers was out of town, Valdez's boyfriend, William McDowell, entered Bowers's bedroom and, while "snooping" around the bedroom, he uncovered an album containing what he believed to be child pornography on Bowers's dresser.  McDowell showed the album to Valdez, who then called her landlord, who, in turn, called the FBI.  In response to the landlord's call, FBI agents went to the residence and met with Valdez and McDowell in the dining area.  The agents looked through the album and confirmed that it likely contained child pornography. The agents subsequently obtained a search warrant for Bowers's bedroom and, upon executing the warrant, they found additional child pornography.  <u>Id.</u> at 524-25.

Bowers challenged the search and seizure of the album on the

grounds that Valdez and McDowell were acting as agents of the government when they uncovered the album. Alternatively, Bowers argued that the album was not located in the dining area when the agents arrived and that Valdez and McDowell had conducted a second "search" at the behest of the agents by retrieving the album from Bowers's bedroom for the agents. <u>Id.</u> at 525. The Court of Appeals affirmed the district court's order denying Bowers's motion to suppress, reasoning that Valdez and McDowell were not "government agents" at the time the album was discovered because (1) the FBI agents were not present or involved in the initial discovery of the album, (2) the FBI gained knowledge of the evidence as a result of the landlord's phone call, and (3) it was only after that privately initiated call that the agents arrived at the residence, were invited inside, and viewed the album in a common area of the residence. <u>Id.</u> at 526. The court further stated that "based on Valdez's statements that the album contained child pornography, the agents were justified in opening the album to view the potentially incriminating evidence" and that "[i]n doing so, the agents 'learn[ed] nothing that had not previously been learned during the private search' and 'infringed no legitimate expectation of privacy.'" <u>Id.</u> (quoting <u>United States v. Jacobsen</u>, 466 U.S. 109, 120 (1984)). Similarly, in Jones's case, the officers were not present or involved in Thomas's discovery of the fraudulent identification documents, the officers gained knowledge of the

items as a result of Thomas's privately initiated phone call, the officers viewed the documents only after Thomas advised the officers of what he had found, the officers learned nothing that had not previously been learned during the private search, and the officers' subsequent viewing of what Thomas "freely made available for [their] inspection did not violate the Fourth Amendment." Id. at 526 (quoting Jacobsen, 466 U.S. at 119) (internal quotation marks omitted); see also United States v. Howard, 752 F.2d 220, 227-28 (6th Cir.), vacated on other grounds, 770 F.2d 57, 62 (6th Cir. 1985) (holding that although police investigator's testimony regarding arson investigation was inadmissible because he did not have a warrant or defendant's consent to search residence, arson investigator for insurance company who cooperated with police investigator could testify about his own findings because insurance investigator was rightfully on the property to determine liability of insurance company and his actions were not attributable to the government).

The court notes that in Bowers, the Sixth Circuit rejected Bowers's alternative argument that Valdez or McDowell conducted a second search at the request of the agents because the record did not support Bowers's claim that either Valdez or McDowell reentered Bowers's bedroom to retrieve the album after the agents arrived. Id. at 526-27. In so ruling, the court appeared to suggest that had the agents, in fact, instructed Valdez or McDowell to reenter

Bowers's bedroom to retrieve the album, those actions might have raised Fourth Amendment concerns. Under such a scenario, Valdez's or McDowell's intent in retrieving the album arguably would not have been "entirely independent of the government's intent to collect evidence," thereby raising the possibility that they would have been acting as government agents if they had retrieved the album at the FBI agents' direction.

No such concerns are at issue in the present case. The record demonstrates that by the time Thomas called the police to report what he had found and was told to bring the items to the police station, he had already conducted his private-citizen search that resulted in the discovery of the false identification documents. At that point, Thomas and his two movers had already begun removing Jones's personal property from the residence and placing it outside on the curb. Even though the police told Thomas to bring the items to the station, it is clear that Thomas's intention from the outset was to remove Jones's property from the residence, i.e. he never intended to leave the items at a location where Jones (had he not been evicted) would have had an expectation of privacy. Thus, Thomas's intent in removing the items from the residence was entirely independent of the government's intent to collect evidence. Once the items were removed from the residence, Thomas (like Valdez and McDowell in Bowers) could turn over the items to the police, whether at the curb or at the police station (or, as

was the case in <u>Bowers</u>, in a shared dining area), without Fourth Amendment implications.[2]

Next, Jones argues that "[a]s stated in the previously filed motions and in this supplemental motion, Defendant respectfully submits that the search and seizure of his property was in violation of his constitutional rights." (Def.'s Supp. Mot. to Suppress at 2.)  This argument provides no specific basis for the court to amend its May 9 Order and thus should be denied.  Finally, Jones argues that the evidence, which was allegedly obtained by police officers in violation of the Fourth Amendment, could not be turned over to the federal government in an effort to remove the taint of the illegal search and seizure.  As stated by the Supreme Court in <u>Elkins v. United States</u>, 364 U.S. 206 (1960), the federal government may not use evidence obtained from state authorities that was seized in a manner which, if engaged in by federal officers, would have been in violation of the Fourth Amendment. <u>Id.</u> at 223-24.  Because the evidence was not unlawfully seized by the police officers, <u>Elkins</u> does not apply.

---

[2]The Motion to Reconsider does not challenge the court's determination in its May 9 Order that Jones did not have an objectively reasonable expectation of privacy in his residence because he had been lawfully evicted from the home and thus lacks standing to challenge the evidence taken from the residence. Therefore, even if the court somehow agreed with Jones's contention that Thomas acted as an agent of the government when he brought the items to the police station, that would not change the court's ultimate conclusion that Jones has no standing to challenge the search.

For the reasons above, the court recommends that Jones's Motion to Reconsider be denied.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

September 23, 2011
Date


**NOTICE**

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**