IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-20343 |
| | ) | |
| DEMOND KEVIN JONES, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND DENYING DEFENDANT'S SUPPLEMENTAL MOTION TO SUPPRESS**

Before the Court is the August 26, 2011 Supplemental Motion to Suppress filed by Defendant Demond Kevin Jones ("Jones") (Supp. Mot. to Suppress Evidence, and Mot. for Return of Property Pursuant to Rule 41 Federal Rules of Criminal Procedure, or in the Alternative Motion to Reconsider Order Adopting Magistrate Judge's Report and Recommendation Denying Def.'s Mot. to Suppress, ECF No. 113 ("Supp. Mot. to Suppress").) The United States of America (the "Government") responded in opposition to Jones' Motion to Suppress on September 7, 2011. (Resp. of the United States to Def.'s Supp. Mot. to Suppress, ECF No. 116.) On September 23, 2011, the Magistrate Judge issued his Report and Recommendation, recommending that the Court deny Jones' Suppression Motion.

(Report and Recommendation, ECF No. 122 ("Report").)  Jones
objected on October 31, 2011.  (Objections to Magistrate's
Report and Recommendations Filed September 23, 2011, ECF No. 137
("Objection").)  The Government responded on November 22, 2011.
(Resp. of the United States to Def.'s Objections to Report and
Recommendation, ECF No. 141.)  For the following reasons, the
Report and Recommendation is ADOPTED, and Jones' Motion to
Suppress is DENIED.

## I.  Background

On  September  11,  2006,  the  grand  jury  returned  an
indictment charging Jones with one count of knowingly possessing
more  than  fifteen  unauthorized  access  devices  with  intent  to
defraud, in violation of 18 U.S.C. § 1029(a)(2) and (3), and one
count of knowingly possessing with intent to use unlawfully five
or  more  identification  documents,  authentication  features,  or
false  identification  documents,  in  violation  of  18  U.S.C.  §
1028(a)(2) and (3).  (See Indictment 1-2, ECF No. 2.)  Jones has
moved  to  suppress  evidence  seized  from  the  premises  at  1961
Rembert  Place,  Memphis,  Tennessee,  where  he  was  a  tenant.  (See
Supp. Mot. to Suppress 1; Mem. of Law and Facts in Supp. of Mot.
to Suppress 10-11, ECF No. 57.)

Jones  first  filed  a  Motion  to  Suppress  on  July  26,  2010.
(Mot. to Suppress, ECF No. 56 ("Original Mot. to Supp.").)  His
Motion  was  referred  to  the  Magistrate  Judge  on  July  27,  2010

(Order of Reference, ECF No. 58), and the Magistrate Judge issued his Report and Recommendation on March 12, 2011. (Report and Recommendation, ECF No. 95 ("March 12 Report and Reccommendation").) On May 9, 2011, the Court adopted the Magistrate Judge's Report and Recommendation. (Order Adopting Magistrate Judge's Report and Recommendation and Denying Def.'s Mot. to Suppress, ECF No. 103 ("Order").) Jones filed this Supplemental Motion to Suppress on August 26, 2011. (Supp. Mot. to Suppress.)

In 2004, Larry Gordon ("Gordon") began renting a two-bedroom townhouse at 1961 Rembert Place in Memphis, Tennessee.[1] (Order 2.) William Thomas ("Thomas") managed the townhouse, which his parents owned. (Id.) Although only Gordon's name appeared on the lease, Jones resided at the townhouse and paid some of the rent. (Id.) Thomas was aware that Jones resided at the townhouse. (Id.) In 2005, Gordon and Jones stopped paying rent, and Thomas initiated eviction proceedings. (Id.) In May 2005, Thomas caused a detainer warrant to be issued by the Shelby County Court of General Sessions. (Id. 3) On September 14, 2005, a judgment and writ of possession were entered in

---

[1] In his Supplemental Motion, Jones does not make any factual objections to the Court's May 9, 2011 Order, contending instead that Thomas acted as an agent of the police (Supp. Mot. 2) and that the evidence seized by the police could not be handed over to the federal government. (Id. 2-4.) In his Objection to the Magistrate Judge's Report and Recommendation, Jones objects to the Magistrate Judge's determination that the officers learned nothing new from the documents Thomas provided (Report 2-3) and that Thomas intended to remove Jones' property from 1961 Rembert Place. (Id. 3.) These factual objections are addressed in the Analysis.

favor of Thomas, authorizing him to evict Gordon and Jones and remove their property from the townhouse. (Id.)

On September 21, 2005, at approximately 8:30 a.m., Thomas, a Shelby County Sheriff's deputy, a locksmith, and two movers arrived at the townhouse to evict Gordon and Jones. (Id.) After the locksmith had opened the front door, the deputy confirmed that no one was inside and left the scene, and Thomas and the two movers began removing items from the premises and placing them on the curb. (Id.) Thomas eventually entered a bedroom and saw several credit cards, identification cards, and driver's licenses on the night stand and window ledge. (Id.) Thomas also saw credit cards, birth certificates, credit card applications, and passports in an open, clear plastic bin next to the bed, as well as a card laminating machine and another open box storing more identification cards and documents. (Id.) When Thomas inspected some of the cards, he noticed that one card contained Jones' personal identification information, but displayed a photograph of someone else Thomas knew. (Id.) Some cards displayed Jones' photograph but contained the personal identification information of other individuals. (Id. 3-4.) Other cards had photographs of different individuals but displayed the same name. (Id. 4.)

After seeing the cards and documents, Thomas called a nearby police station, reported what he had found, and was told

to bring the items to the station. (Id.) Thomas placed the cards and documents in a clear plastic container and a box that he had found in the room, put lids on the container and the box, and transported them to the station. (Id.) Once Thomas had arrived at the station, he gave the container and the box to Memphis Police Department Officer McQueen-Brown ("Officer McQueen-Brown"), described their contents, and stated his suspicion that the items were criminal in nature. (Id.) Officer McQueen-Brown looked through the clear plastic container and recognized several items as fraudulent identification documents. (Id.) The container and the box were taken to a room where she and other officers began inspecting the items more closely. (Id.)

Thomas and an officer returned to 1961 Rembert Place, where Thomas saw Gordon retrieving his property. (Id.) Thomas called officers at the station to inform them that Gordon was at the townhouse. (Id.) Officer McQueen-Brown and other officers traveled to the townhouse, asked Gordon for identification, discovered that he had an outstanding arrest warrant, and arrested him based on that warrant. (Id.)

Shortly thereafter, Jones arrived at the townhouse in his car and pulled into the driveway. (Id. 5) Thomas and Gordon identified Jones as the person who resided with Gordon and who was responsible for the identification documents. (Id.) Jones

5

attempted to back out of the driveway, but the officers stopped him. (Id.) Officer McQueen-Brown approached Jones' car and asked for identification. (Id.) Jones provided a driver's license displaying his photograph, but listing a different name. (Id.) Officer McQueen-Brown then looked into the car and saw on the passenger's side an open briefcase containing several identification documents and credit cards. (Id.) She also saw other identification documents in the driver's side door panel. (Id.) Jones was arrested because he possessed fraudulent identification documents and because he had outstanding arrest warrants. (Id.) His car was inventoried and towed to the city lot. (Id.)

The Court found the search of Jones' automobile, apartment, and containers permissible under the Fourth Amendment. (See Order.) The Court held that Jones had no reasonable expectation of privacy in the apartment because, once Thomas had obtained an eviction notice, Jones was a trespasser in the residence. (Id. 13.) The Court found that Jones "had no reasonable expectation of privacy in the items in the containers because they were in plain view inside the property at which he had no legal right to reside and were concealed only when Thomas collected them, put them in containers, and placed lids on the containers." (Id. 16.)

In his Supplemental Motion, Jones makes two arguments. He contends that, because Thomas called the police to report what he had found in the bedroom and the police told him to bring what he had found to the West Precinct station, Thomas "became an agent of the police." (Supp. Mot. 2.) Jones also contends that the Government is barred from introducing evidence found in the apartment under Elkins v. United States, 364 U.S. 206, 211 (1960), because the police unlawfully obtained the evidence from his house. (Id. 3-4.)

The Magistrate Judge treated the Supplemental Motion as a Motion for Reconsideration, (Report 2), which should only be granted if necessary to correct a clear error of law or prevent manifest injustice. (Id. 4.) The Magistrate Judge concluded that no such error had occurred because Thomas was an independent agent who conducted his search as a private citizen and who called the police only after he had discovered the false documents. (Id. 9.) Because Thomas was a private citizen, the Magistrate Judge concluded that the evidence was not barred under Elkins. (Id. 10.) The Magistrate Judge also rejected Jones' contention that the search and seizure were unconstitutional because he provided "no specific basis for the Court to amend its May 9 Order." (Id.)

Jones objects to the Magistrate Judge's conclusions. (Objection.) He contends that the Magistrate Judge applied the

incorrect standard of review (<u>Id.</u> 2), made several erroneous factual and legal conclusions about Thomas' involvement in the police investigation (<u>Id.</u> 2-4), and misconstrued Jones' argument about the application of <u>Elkins</u>. (<u>Id.</u> 4-6.)

## II.  Review of Report and Recommendation

"It is well-settled that upon proper objection by a party, a district court must review de novo a magistrate judge's ruling on a motion to suppress." <u>United States v. Quinney</u>, 238 F. App'x 150, 152 (6th Cir. 2007) (citations omitted). The district court need not review—under a de novo or any other standard—those aspects of a magistrate judge's report and recommendation to which no specific objection is made. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140, 149-50 (1985); <u>United States v. Robinson</u>, 352 F. App'x 27, 28-29 (6th Cir. 2009).

## III. Analysis

Jones has filed three objections to the Magistrate Judge's Report and Recommendation.  First, he contends that his "supplemental motion should be considered fully on the merits," and that he would suffer a constitutional violation if it were not.  (Objection 2.)  Second, he objects to the Magistrate Judge's factual and legal conclusions about Thomas' involvement with the police.  (<u>Id.</u> 2-3.)  Third, he contends that the Magistrate Judge did not adequately address his argument that the police should have returned his property when the state

charges were dismissed in 2005, and that failure to do so violates Elkins. (Id.)

**A. Standard of Review**

Jones titles his Motion a "Supplemental Motion to Suppress Evidence," but it is alternatively titled a "Motion to Reconsider." Jones filed his Supplemental Motion after the Court had entered its Order on his Motion to Suppress; there was nothing for him to supplement. Instead, he seeks to reopen the suppression hearing so that the Court's prior ruling can be reconsidered.

"The Federal Rules of Criminal Procedure make no provision for a motion to reconsider," United States v. Hopewell, No. 08-cr-065, 2009 U.S. Dist. LEXIS 31984, at 2 (S.D. Ohio April 15, 2009), and so "courts adjudicating such motions in criminal cases typically evaluate such motions under the same standards applicable to a civil motion to alter or amend judgment pursuant to Fed. R. Civ. P. 59(e)." United States v. Jarnigan, No. 3:08-CR-7, 2008 U.S. Dist. LEXIS 101768, at *2 (E.D. Tenn. Dec. 17, 2008); accord United States v. Titterington, No. 20-20165, 2003 U.S. Dist. LEXIS 887, at *1 (W.D. Tenn. May 22, 2003); United States v. Sims, 252 F. Supp. 2d 1255, 1260-61 (D. N.M. 2003); United States v. Thompson, 125 F. Supp. 2d 1297, 1300 (D. Kan. 2000). A court may grant a motion to alter or amend judgment only if there was "'(1) a clear error of law; (2) newly

discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.'" ACLU of Ky. v. McCreary Cnty, 607 F.3d 439, 450 (6th Cir. 2009) (quoting Intera Corp v. Henderson, 428 F.3d 605, 620 (6th Cir. 2005)).

The Sixth Circuit has cautioned that "[a] ruling on whether to reopen a suppression hearing is governed by the principles of jurisprudence that relate to reopening proceedings, generally." United States v. Carter, 374 F.3d 399, 405 (6th Cir. 2005) judgment vacated and remanded on unrelated grounds, 543 U.S. 1111 (2005). "'[C]ourts should be extremely reluctant to grant reopening.'" Id. (quoting United States v. Kithcart, 218 F.3d 213, 219-20 (3d Cir. 2000)). "Generally, absent any new evidence or evidence that was unobtainable before the original suppression hearing, or any new issues that became relevant since the initial hearing, the reopening of a suppression hearing is unwarranted." United States v. Stokely, 733 F. Supp. 2d 868, 870 (E.D. Tenn. 2010). Courts should consider the timeliness of the motion, the character of the testimony, and the effect of granting the motion. See United States v. Willyard, No. 3:07-CR-44, 2008 U.S. Dist. LEXIS 29848, at *5 (E.D. Tenn. April 8, 2008) (citing United States v. Blankenship, 775 F.2d 735, 741 (6th Cir. 1985)). "'[A] motion for reconsideration should not be used to reiterate arguments that have been made previously.'" United States v. Diaz, No. 09-CR-

037-WBH/AJB, 2010 U.S. Dist. LEXIS 140776, at *18 (N.D. Ga. Dec. 30, 2010) (quoting Adler v. Wallace Computer Servs., Inc., 202 F.R.D. 666, 675 (N.D. Ga. 2001)).

The Magistrate Judge properly concluded that the May 9, 2011 Order could be amended only in the event of a clear error of law or to prevent manifest injustice. (Report 4.) The Magistrate Judge applied the proper standard. Jones has the right to a trial and to appeal the Court's decision. His claim that there has been a constitutional violation is not well taken. "[C]onsiderations of finality and avoiding piecemeal litigation" are important in criminal as well as civil trials. United States v. Battle, 272 F. Supp. 2d 1354, 1358 (N.D. Ga. 2003). Jones is not entitled to take "as many bites at the apple as necessary to achieve [his] desired end." EEOC v. Schott N. Am., Inc., No. 06cv1246, 2009 U.S. Dist. LEXIS 8546, at *6 (M.D. Pa. Feb. 5, 2009).

The Magistrate Judge did not reject Jones' arguments out of hand. He considered and rejected them. No new evidence or new issues justified reopening. Because a court should only accept a motion to reconsider when there is "a need to prevent manifest injustice," ACLU of Ky. 607 F.3d at 450 (quoting Intera Corp., 428 F.3d at 620), Jones' argument that the Magistrate Judge applied the wrong standard of review is without merit.

**B. Whether Thomas was an Agent of the Government**

Jones objects to several findings of fact and conclusions of law relating to Thomas' discovery of the seized property. Jones contends that the Magistrate Judge erred in concluding that the officers learned nothing new when they viewed the documents after Thomas had informed them of what he had found and in concluding that Thomas intended to remove Jones' property from the residence during the eviction proceedings. (Objection 2-3.)

The Magistrate Judge found no violation of Jones' Fourth Amendment rights because the officers "were not present or involved in Thomas's discovery of the fraudulent identification documents" and only learned of the items "as a result of Thomas's privately initiated phone call." (Report 8.) Thomas testified that he went to the residence on September 21, 2005, to evict Jones and Gordon and to remove their belongings from the property. (William Thomas, Suppression Hr'g 13-14, ECF No. 81.) Thomas intended to put Jones and Gordon's property on the curb. (Id. 17.) When Thomas began cleaning out Jones' bedroom, he noticed "IDs and credit cards . . . [with] different names, different pictures." (Id. 21.) Several of the IDs had Jones' photograph, but under different names. (Id. 22.) Thomas estimated there were seventeen IDs on the bedroom's nightstand and window. (Id.) He also saw a transparent plastic tub full of credit applications and other IDs (Id. 24.), an open plastic

blue box full of documents (Id. 25.), and a machine that Thomas identified as a "credit card maker machine." (Id. 26.) Thomas called the West Precinct, "told them what [he] found," and was told to bring the items to the police station. (Id. 27.) He took the IDs, boxes, and credit card maker to the police station. (Id. 28-29.) Once there, he told the officers what was in the boxes. (Id. 29.) Thomas found the IDs, credit card applications, and credit card maker during a private search while he was evicting his tenants. He informed the police of the circumstances, and they reviewed the items Thomas had found. Jones points to nothing in the record that the police found that Thomas had not, but demands that all of the evidence Thomas found should be excluded. Jones' contention that the officers learned "something that had not been learned during the private search" is not well taken. (Objection 3.)

Jones' second contention is also unavailing. He argues that Thomas did not intend to leave the items at a location where Jones would not have had an expectation of privacy and that Thomas' motivation was not independent from the police's intent to collect evidence. (Id.) Thomas testified that he intended to put Jones and Gordon's property on the curb. (William Thomas, Suppression Hr'g 16.) Thomas testified that he normally did so when he evicted a tenant. (Id. 16-17.) The Magistrate Judge, who "is in the better position to assess the

credibility of witnesses he sees and hears" than this Court, found Thomas' testimony credible. United States v. Robinson, No. 1:07-CR-1, 2007 U.S. Dist. LEXIS 53290, at *1 (E.D. Tenn. July 23, 2007). Jones has offered no reasonable basis for this Court to disagree with the Magistrate Judge's factual finding.

Jones asserts that Thomas was acting as an agent of the government because "the government acquiesced in the continued seizure of the property when instructing Thomas to bring the items to the police station and the police themselves conducted an additional search of the items within the closed containers." (Objection 4.) The government's acquiescence matters only at the time of the initial search. The Sixth Circuit has established a two-factor test to determine whether a private party is acting as an agent of the government. United States v. Bowers, 594 F.3d 522, 525-26 (6th Cir. 2010). Those factors are: "(1) the government's knowledge or acquiescence" in the search, and "(2) the intent of the party performing the search." Id. at 526. (quoting United States v. Hardin, 539 F.3d 404, 418 (6th Cir. 2008)). "[I]t is the moment of the 'official invasion of the citizen's privacy' that is key to determining the reasonableness of the action." Id. (quoting United States v. Jacobsen, 466 U.S. 109, 115 (1984)). "'[T]he police must have instigated, encouraged, or participated in the search.'" Bortner v. Sheldon, No. 3:08 CV 02615, 2009 U.S. Dist. LEXIS

89556, at *26 (N.D. Ohio Aug. 13, 2009) (quoting United States v. Lambert, 771 F.2d 83, 89 (6th Cir. 1985)).

Jones has offered "no evidence that the police instigated, encourage[d], or participated in the search by the landlord." United States v. Noble, No. 1:05CR0327-24, 2006 U.S. Dist. LEXIS 8429, at *7. (N.D. Ohio Feb. 9, 2006). As in Bowers, the police "gained knowledge of the incriminating evidence as a result of [a] phone call." Bowers, 594 F.3d at 526.

Jones appears to argue that the "continued acquiescence" and "additional search of [the] items within the closed containers" constituted a second search. (Objection 4.) That argument is not well taken. "[T]he critical inquiry under the Fourth Amendment is whether the authorities obtained information with respect to which the defendant's expectation of privacy had not already been frustrated." United States v. Runyan, 275 F.3d 449, 461 (5th Cir. 2001). Here, the officers "learned nothing that had not previously been learned during the private search." Bowers, 594 F.3d at 526. (quoting Jacobsen, 466 U.S. at 120). Thomas had identified the fake IDs, the credit card maker, and the applications during his private search. The police "knew with substantial certainty, based on the statement [by Thomas] . . . what they would find inside." Runyan, 275 F.3d at 463. There was no violation of Jones' expectation of privacy, and the search was constitutional.

**C. Whether _Elkins_ Applies**

Jones' final objection is that the Magistrate Judge misconstrued his argument about the application of _Elkins_. _Elkins_ holds that the federal government may not use evidence obtained from state authorities that was seized in a manner that violated the Fourth Amendment. 364 U.S. at 223-224. The Magistrate Judge concluded that, "[b]ecause the evidence was not unlawfully seized by the police officers, _Elkins_ does not apply." (Report 10.) Jones contends that the Government should have returned his property when the state charges against him were dismissed on November 18, 2005. (Objection 16.) He argues that the Government held the evidence for more than five and a half years and now seeks to use the evidence "without a warrant, [] without consent, and without justification." (Supp. Mot. 3.)

Jones misconstrues _Elkins_. Before _Elkins_, the Supreme Court had held that any evidence seized pursuant to a search by state officers, although illegal under the Fourth Amendment, could be provided to federal officials for use in a federal criminal trial. See _United States v. Eastland_, 989 F.2d 760, 766 (5th Cir. 1993) (discussing the silver platter doctrine prior to _Elkins_). In _Elkins_, the court reconsidered that principle, holding that "evidence obtained by state officers during a search which, if conducted by federal officers, would have violated . . . the Fourth Amendment is inadmissible." 364

U.S. at 223. There was no obligation that the federal government obtain a separate, independent warrant. Rather, Elkins held that "evidence seized illegally by one sovereign could not be turned over to another sovereign, because 'to the victim it matters not whether his constitutional right has been invaded by a federal agent or state agent.'" United States v. Angleton, 314 F.3d 767, 773 (5th Cir. 2002); accord United States v. Medina, 181 F.3d 1078, 1081 (9th Cir. 1999)(holding that Elkins "forbid[s] the federal government from making the argument that another sovereign conducted the search, [and] therefore it can ignore the methods by which the search was conducted.").

Jones relies on United States v. Birrell, 470 F.2d 113 (2d Cir. 1972), but Birrell does not support his argument. The defendant in Birrell was charged with perjury under 18 U.S.C. § 1621 because he had signed an affidavit stating he was unemployed and without income when seeking to proceed in forma pauperis and to receive a court appointed attorney. Id. at 114-15. The government sought to introduce evidence of the defendant's financial condition that was found by New York City police in a suitcase, trunk, and boxes in the apartment of a homicide victim. Id. at 116. The defendant had gone to the police station where the items were stored and unsuccessfully demanded their return. Id. The Assistant United States

Attorney, who had prosecuted the defendant in an unrelated matter, had seen a newspaper article in which the manager of the victim's apartment building said that the defendant had paid rent for the apartment. Id. His suspicions aroused by the defendant's ability to pay a large sum in rent, the prosecutor directed federal agents to search the belongings removed from the apartment for evidence of the defendant's financial status. Id.

The Second Circuit held that, although the first search by New York City police officers was constitutional, id. at 116-17, the second, by IRS officials at the request of the federal prosecutor, was not. Id. at 117. The purpose of the searches differed. The court held that once the defendant had requested the papers, another sovereign, with "a different purpose," could not search without a warrant. Id.

The facts of this case differ from Birrell. Here, there was no different purpose. The evidence was obtained after Thomas had informed the police that Jones was making false IDs and credit cards, the crimes Jones was charged with committing. The evidence was not obtained by state officials in violation of the Fourth Amendment, and it was not used by federal officials for a different purpose. See United States v. Wright, 16 F.3d 1429, 1436 (6th Cir. 1994) (holding that "the appropriate inquiry for a federal court considering a motion to suppress

evidence seized by state police officers is whether the arrest, search, or seizure violated the Fourth Amendment.").

Jones has pointed to no authority, and the Court has found none, that stands for the proposition that a warrant is the predicate to introducing evidence against a defendant in a criminal trial when that evidence was lawfully obtained. Nor is Jones likely to do so, "because the ultimate touchstone of the Fourth Amendment is reasonableness." Brigham City v. Stuart, 547 U.S. 398, 403 (2006) (internal quotations omitted). Jones had no reasonable expectation of privacy in evidence which had been observed by a private actor in an apartment in which Jones knew he was not a lawful occupant, which had been removed as part of an eviction, and which had been turned over to the police. Jones' Fourth Amendment rights have not been violated under Elkins.

Jones has failed to show the presence of any conduct justifying the suppression of evidence. "'[A] criminal suspect invoking the exclusionary rule must show that 'its deterrence benefit outweighs its substantial social costs.'" United States v. Clariot, 655 F.3d 550, 554 (6th Cir. 2010) (quoting Pa. Bd. of Prob. & Parole v. Scott, 524 U.S. 357, 363 (1998)). "Particularly when law enforcement officers acted in objective good faith or their transgressions have been minor, the magnitude of the benefit conferred on such guilty defendants

offends basic concepts of the criminal justice system." <u>United States v. Leon</u>, 468 U.S. 897, 907 (1978).  The Government has "gained no unfair advantage by its conduct." <u>Clariot</u>, 655 F.3d at 555.  There was no constitutional violation by the police, who lawfully received the evidence from a private actor.  There was no violation by the Government where, a s here, there was no different purpose.

Jones also moves in his objection for return of the property and the containers, pursuant to Federal Rule of Criminal Procedure 41(g).[2]  (Objection 5.)  Rule 41(g) states:

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

"Rule 41[(g)] recognizes the right of a person to obtain the return of lawfully seized property 'when aggrieved by the government's possession of it,' and not just at the time of the initial seizure." <u>Fox v. Van Oosterum</u>, 176 F.3d 342, 356 (6th Cir. 1999) (<u>J. Clay</u>, concurring in part and dissenting in part) (quoting Fed. R. Crim. P.  R. 41(e) (1994)).  However, "'[i]f the United States has a need for the property in an

---

[2] Jones moves pursuant to Rule 41(e), but Rule 41 was amended in 2002. Motions to return unlawfully seized property are now made under Rule 41(g).

investigation or prosecution, its retention of the property generally is reasonable." Id. (quoting Fed. R. Crim P. 41(e) advisory committee note). "'The general rule is that seized property . . . should be returned to the rightful owner after the criminal proceedings have terminated.'" United States v. Popham, 382 F. Supp. 2d 942, 955 (E.D. Mich. 2005) (quoting Sovereign News Co. v. United States, 690 F.2d 569, 577 (6th Cir. 1982)) (emphasis added). Jones is the defendant in a criminal proceeding in which the items seized are necessary evidence. He has not explained why the evidence should be returned or why the Government's continued possession is unreasonable given the impending trial. His motion for return of property is DENIED.

**IV. CONCLUSION**

For the foregoing reasons, Jones' objections are not well taken. The Court ADOPTS the Report and Recommendation of the Magistrate Judge and DENIES the Supplemental Motion to Suppress. All findings and conclusions of the Magistrate Judge not discussed above have not been specifically objected to and are ADOPTED.

So ordered this 29th day of November, 2011.

/s Samuel H. Mays, JR.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE